

**FILED**

**JUL 1 4 2015**

Judge Edmond E. Chang
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY GALVAN

No. 14CR385

Judge Edmond E. Chang

### PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant ANTHONY GALVAN, and his attorney, MICHAEL B. NASH, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with willfully engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A) (Count One); knowingly receiving a firearm that had been transported in interstate commerce while under indictment for a felony offense, in violation of Title 18, United States Code, Section 922(n) (Counts Two and Four); and distribution of cocaine, in violation of Title 21, United States Code, Section 841(a)(1) (Counts Three, Five, Six, and Seven).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.   Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.   By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count One, which charges defendant with willfully engaging in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A); and Count Three, which charges defendant with distribution of cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

## Factual Basis

6.   Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Three of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

   a.   With respect to Count One of the indictment:

Between on or about January 14, 2014 and on or about February 20, 2014, defendant Anthony Galvan ("GALVAN"), not being a licensed dealer within the meaning of Chapter 44, Title 18, United States Code, willfully engaged in the business of dealing in firearms, in violation of Title 18, United States Code, Section 922(a)(1)(A).

2

On or about October 1, 2013, defendant was charged by information in the Circuit Court of Cook County in case number 13C66112401 with two offenses, both of which were punishable by a term of imprisonment exceeding one year, namely, armed violence, in violation of 720 ILCS 5/33A-2(a), and possession of a controlled substance, in violation of 720 ILCS 570/402(c). On September 18, 2013, GALVAN appeared for a preliminary hearing and the court entered a finding of probable cause, and on October 9, 2013, GALVAN was arraigned on the above charges. At all relevant times here, the state charges remained pending and, as a result, GALVAN was prohibited from possessing firearms.

Between January 14, 2014 and February 20, 2014, GALVAN sold a total of six firearms to an undercover Chicago Police Department officer (the "UC") through five transactions, each of which was conducted in the UC's vehicle parked in front of GALVAN's residence in Harvey, Illinois. During each of the transactions, the UC wore an audio-recording device that captured the conversation between the UC and GALVAN.

## *January 14, 2014*

On or about January 14, 2014, in exchange for $325 from the UC, GALVAN handed the UC a Bryco Arms, Model 38, .380 caliber pistol, bearing serial number 1293583. GALVAN assured the UC that the firearm was operational and stated that he was also providing an extra loaded magazine for the firearm.

During the meeting, in addition to discussing future firearms transactions, GALVAN asked the UC about his interest in purchasing cocaine and agreed to sell cocaine to the UC at a future time.

## January 16, 2014

On or about January 16, 2014, in exchange for $275 from the UC, GALVAN handed the UC a Raven Arms, Model MP25, .25 caliber pistol, bearing serial number 1467045 with a magazine containing six live rounds of .25 caliber ammunition.

After the transaction, GALVAN and the UC discussed future transactions of firearms and ammunition. The UC stated that he attempted to apply for "one of them cards to buy some pistols," referring to a Firearm Owner's Identification Card, but that his/her application was denied. GALVAN responded, "My sister in laws got a [FOID] card … . She buys bullets, she goes in there but don't know about guns. I be like, go get me, and they ask her." GALVAN further advised the UC that sellers do not conduct background checks for firearm purchases at Indiana gun shows, to which the UC asked, "They don't check?" and GALVAN replied, "No background no nothing. The guns out there are cheap."

## January 22, 2014

On January 22, 2014, in exchange for $920 from the UC, GALVAN handed the UC a Taurus, Model PT99, 9mm caliber pistol, bearing serial number TPD78596 and a Phoenix Arms, Model HP25A, .25 caliber pistol, bearing serial number 4400562.

4

During the transaction, the UC and GALVAN discussed the quality of the Taurus pistol and the UC questioned if it would work. GALVAN responded, "It's gonna work. We shot it. It's gonna work. That's what I'm saying we were upstairs just playing with it, cleaning, cleaning. We was just cleaning the motherfucker up. Magazine. We was cleaning everything because my friend cleaned the fingerprints, can you feel me? I'm not gonna sell it to nobody a gun with my fingerprints on it."

Having discussed the Taurus pistol, GALVAN then handed the Phoenix Arms pistol to the UC. GALVAN bragged about the quality of the Phoenix Arms pistol, stating, "That's some high tech shit too. It's got like three safeties. There's a safety up there too." As the UC handled the Phoenix Arms pistol, GALVAN stated, "I don't know how to demonstrate it to you cause I only got one fucking hand, but I ordered too." The UC asked, "This was in the box?" to which GALVAN replied, "...Nah I didn't get it in the box but they got it in the box. But man how they gonna come from out of town in boxes ... they stash them."

## *January 30, 2014*

On January 30, 2014, in exchange for $450 from the UC, GALVAN handed the UC an F.I.E. Corp. Model 38st .38 caliber revolver, bearing serial number St35533.

### *February 20, 2014*

On February 20, 2014, in exchange for $430, GALVAN handed the UC an RG Industries, Model RG14, .22 caliber revolver, bearing serial number L748730 along with six live rounds of .22 caliber ammunition and two plastic bags of containing 1.7 grams of cocaine.

After the sale of the revolver and cocaine, the UC asked GALVAN if his firearms supplier would be willing to purchase firearms at a gun store for the UC. GALVAN responded, "Ah, he gots go cause at a gun show it not registered under his name ... You get me? He could just go in there and buy it cause he got his gun card." The UC replied, "My little guy I was with today, he told me that he, you could just take them numbers off though." GALVAN replied, "No, no, that's a felony if you get caught with the police with a gun and its scraped off the serial numbers. That's a felony, that's like you taking hide like."

GALVAN has never been licensed as a firearms dealer and knew that selling the firearms to the UC in this fashion was illegal.

In addition, on or about July 15, 2014, GALVAN possessed several items of ammunition that were discovered in hidden compartments in various locations within his residence in Harvey, Illinois, as detailed in paragraph 15 below.

    b.    With respect to Count Three of the indictment:

On or about January 16, 2014, GALVAN, knowingly and intentionally distributed a controlled substance, namely, a quantity of a mixture and substance

6

Case: 1:14-cr-00385 Document #: 48 Filed: 07/14/15 Page 7 of 20 PageID #:106

containing cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, during the January 16, 2014, meeting described above, in addition to selling a firearm to UC, GALVAN also sold the UC two plastic bags containing approximately 1.7 grams of cocaine in exchange for $100.

In addition to the January 16, 2014, cocaine transaction described above, GALVAN sold the following amounts of cocaine to the UC on three additional occasions: 2.7 grams of cocaine on February 8, 2012; 3.0 grams of cocaine on February 12, 2014; and 1.7 grams of cocaine on February 20, 2014. In total, during January and February of 2014, GALVAN sold approximately 10 grams of cocaine to the UC.

## Maximum Statutory Penalties

7. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

    a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

    b. Count Three carries a maximum sentence of 20 years' imprisonment. Count Three also carries a maximum fine of $1,000,000. Defendant further understands that with respect to Count Three, the judge also must impose a

term of supervised release of at least three years, and up to any number of years, including life.

c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 25 years' imprisonment. In addition, defendant is subject to a total maximum fine of $1,250,000, a period of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2013 Guidelines Manual.

b. **Offense Level Calculations.**

<u>Count One</u>

i. Pursuant to Guideline § 2K2.1(a)(6), the base offense level is 14 because defendant was a prohibited person at the time defendant committed the instant offense;

ii. Pursuant to Guideline § 2K2.1(b)(1)(A), the offense level is increased by 2 because the offense involved between 3 and 7 firearms;

iii. Pursuant to Guideline § 2K2.1(b)(4), the offense level is increased by 2 because the offense involved a stolen firearm, namely, the Bryco Arms Model 38, .380 caliber pistol, bearing serial number 1293583;

iv. Pursuant to Guideline § 2K2.1(b)(5), the offense level is increased by 4 because the defendant engaged in the trafficking of firearms;

v. The total offense level for Count One is 22.

<u>Count Three</u>

vi. Pursuant to Guideline §§ 2D1.1(a)(5) and (c)(14), the offense level for Count Three is 12 because the offense involved less than 25 grams of cocaine.

<u>Combined Offense Level</u>

vii. Pursuant to Guideline §§ 3D1.2, Counts One and Three are treated as separate groups. Pursuant to Guideline §§ 3D1.4(a) and (c), Count One (Group One) counts as one unit and Count Three (Group Two) does not count as any units because Group Two is 9 or more levels less serious than Group One.

    viii.  Pursuant to Guideline § 3D1.4, the combined offense level is therefore 22.

Acceptance of responsibility

    ix.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    x.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 30 to 37 months' imprisonment, in addition to any supervised release and fine the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement

regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $2,850 as compensation for government funds that defendant received during the investigation of the case.

14. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15. Defendant agrees to waive and abandon any right, title, or interest he has in the following property:

- 6 Winchester-Western .40 rounds;
- 6 Federal 9mm rounds;
- 4 Remington .22 rounds;
- 1 black 9mm magazine;
- 17 Winchester-Western 9mm rounds;
- 2 assorted rounds;
- Black Tanfoglio Italy .40 magazine containing 2 S&W .40 rounds;
- S&W .40 magazine;
- Black Ruger SR9 9mm magazine;
- Black Butler Creek 25/22 magazine;
- 25 Sellier & Bellot .40 rounds;
- 1 Federal .45 round;
- 7 Winchester-Western .22 rounds;
- 16 Remington .22 rounds;
- 10 Sellier & Bellot .765 rounds;
- 4 Sellier & Bellot .635 rounds;
- 45 unknown make .22 rounds;
- 3 Remington 380 rounds;
- 2 Winchester-Western .32 rounds;
- 3 spent .22 rounds; and
- 24 S&W .40 rounds.

Defendant understands that the government, after publication of notice to any others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

16. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

17. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14CR385.

18. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

15

    iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi.  At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii.  At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b.  **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

20. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights

### Presentence Investigation Report/Post-Sentence Supervision

21. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23. For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

24. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 7-14-15

By [signature]
ZACHARY T. FARDON
United States Attorney

[signature]
TIMOTHY J. STORINO
Assistant U.S. Attorney

[signature]
ANTHONY GALVAN
Defendant

[signature]
MICHAEL B. NASH
Attorney for Defendant